### In re NAVIGATOR GAS TRANSPORT PLC, et al., Reorganized Debtors.

No. 03–10471 (ALG).

United States Bankruptcy Court, S.D. New York.

Dec. 29, 2006.

---

⚷3570

Paul, Weiss, Rifkind, Wharton, & Garrison LLP, by Alan W. Kornberg, Esq. Maria T. Vullo, Esq., Stacey A. Shorthall, Esq., Elizabeth McColm, Esq., New York, NY, Attorneys for Official Committee of Unsecured Creditors Committee, Movant.

Morgan, Lewis & Bockius LLP, by Andrew D. Gottfried, Esq., Jay Teitelbaum, Esq., New York, NY, Attorneys for Pro-Consult Limited.

## MEMORANDUM OF OPINION

ALLAN L. GROPPER, Bankruptcy Judge.

### Introduction

Navigator Gas Transport PLC, five of its ship-owning subsidiaries, and its parent holding company, Navigator Holdings PLC (collectively "the Debtors"), filed for Chapter 11 protection on January 26, 2003. The Debtors' business involved the ownership and operation of vessels which were

utilized principally in the shipping of lique- fied petroleum gas and petrochemical gas pursuant to charter agreements. Al- though there was apparently no question that the Debtors were eligible to file under § 109 of the Bankruptcy Code, in that they had property in this country, they were incorporated in the Isle of Man, and most if not all of their business was conducted and most of their assets were located out- side the United States. Cambridge Gas Transport Corp. ("Cambridge"), a holding company that owned the shares of Naviga- tor Holdings PLC, as well as the directors and ultimate owners of the group, led by Giovanni Mahler, a Swiss citizen, were also non-residents and had no known personal assets in the United States.

On February 6, 2003, a creditors' com- mittee (the "Committee") was appointed in the Chapter 11 cases. The Committee opposed a plan of reorganization filed by the Debtors and filed a competing plan that eventually received overwhelming support from the creditor body. The Court confirmed the Committee's Second Amended Joint Plan of Reorganization (the "Plan") on March 17, 2004. Cam- bridge, the non-debtor holding company that held the stock of the Debtors, and its controlling shareholders, led by Mahler, thereupon commenced a two-year effort to obstruct consummation of the Plan. Among other things, they refused to permit trans- fer of ownership of the Debtors into a new corporation controlled by the creditors, and they opposed the Committee's efforts to obtain such change of ownership through the assistance of the Court in the Isle of Man. Cambridge and the Mahler group were initially successful in proceed- ings before the Court there, where the Deemster held that he could not give effect to the Chapter 11 proceedings in light, *inter alia,* of lack of formal notice of the

proceedings to Cambridge. This initially caused the Committee to file winding up proceedings under local law in order to attempt to effectuate the substantive pro- visions of the confirmed Chapter 11 plan, and a liquidator appointed in the Isle of Man appeared in these cases. Eventually, however, the decision of the Court in the Isle of Man was reversed by the Court of Appeal, and the reversal was sustained by the Judicial Committee of the Privy Coun- cil of the House of Lords, which held per Lord Hoffmann that it was appropriate under general common law principles of comity to recognize the U.S. Chapter 11 proceedings. *Cambridge Gas Transp. Corp. v. Official Comm. of Unsecured Creditors of Navigator Holdings, PLC,* 2006 WL 1546603 (Privy Council), [2006] UKPC 26, [2006] 3 All ER 829. As a consequence of its success on appeal, the Committee stayed its winding up proceed- ings in the Isle of Man, and the U.S. Plan finally became effective on August 9, 2006.

Prior to the effectiveness of the Plan, and in response to the obstruction de- scribed above, the Committee moved for sanctions against Cambridge and certain of its directors, including Mahler and two other named "common directors." The Court signed an order on April 16, 2004, granting the Committee's motion and or- dering monetary sanctions. In several subsequent orders dating from June 2004, through October, 2005, this Court assessed sanctions against Mahler and other con- temnors for roughly $14 million.[1] A por- tion of the cumulative monetary judgments represents civil sanctions and was assessed in specific amounts against the specific contemnors, including Mahler. The other part was intended to reimburse the Com- mittee and the Debtors for their legal fees. The Committee has also attempted to sat-

1. The case was transferred to the undersigned    Judge on March 30, 2005.

isfy its judgments against Mahler by filing suit in Lugano, Switzerland, where he resides. At present, the contemnors have not satisfied any of the outstanding contempt judgments against them.

*The Relevant Terms of the Plan and the Distribution to ProConsult*

Pursuant to the Plan, the Reorganized Debtors issued 10,000,000 shares of new common stock to holders of the old First Priority Ship Mortgage Notes (the "First Notes") and the Second Priority Ship Mortgage Notes (the "Second Notes"). Holders of the First Notes were to receive 97.25% of the newly issued shares, with the balance of the shares to be distributed to the Second Noteholders.

ProConsult Limited, a British Virgin Islands corporation ("ProConsult"), held a substantial amount of First Notes and was nominally entitled under the Plan to receive a distribution of 128,226 shares of the Reorganized Debtors. Alleging that it had evidence that ProConsult was a nominee for Mahler, the Committee obtained *ex parte* orders on August 16 and 31, 2006 (the "Emergency Motions") from this Court restraining the brokers who held the shares for distribution (collectively, the "Brokers") from transferring the Shares to ProConsult. The *ex parte* Emergency Motions also gave the Committee authority to take discovery of ProConsult and Mahler regarding Mahler's interest in the Shares. Mahler never responded to the discovery requests. The substance of ProConsult's response is addressed below.

The Committee now moves to extend the injunction this Court issued in connection with the Emergency Motions and for an order permanently enjoining the Brokers from transferring the Shares, or alternatively an order directing further discovery of ProConsult's principal, Jorg G. Bucherer.

*The Committee's Contentions and ProConsult's Response*

The Committee's initial contentions were set forth in the Emergency Motions, seeking orders in aid of execution of judgments against Mahler. In substance, the Committee alleged that the Shares, while purportedly owned by ProConsult, are subject to a "beneficial interest" held by Mahler. The Committee's "good faith belief" is based in large part upon the affidavit of Peter Shaerf, a Managing Director of AMA Capital Partners. There Shaerf states that he had a discussion with Mahler in 2001 in which they discussed the proposition (i) that it would be useful to the holders of the Debtor's equity if the shareholders bought enough First Notes to acquire a "blocking position" to prevent confirmation of a Committee-sponsored plan and (ii) that Mahler should not purchase any Notes in his own name. Shaerf recommended Jefferies & Co. as a possible broker, and the Committee produced documents from Jefferies and other sources indicating that Notes in amounts that Shaerf had discussed with Mahler were purchased by ProConsult through that firm. The Committee also established (i) that ProConsult's corporate registry is located in Lugano, Switzerland, the same city in which Mahler resides; and (ii) that ProConsult filed a ballot to reject the Committee's plan and to accept the Debtor's plan, the only creditor to so vote; and (iii) that ProConsult also objected to the Committee's plan.

Beginning on September 6, 2006, the Committee served ProConsult and Mahler with notices that the Committee planned to garnish the Shares in an effort to satisfy the contempt judgments against Mahler. On September 20, 2006, ProConsult unofficially responded to the Committee's notice by alleging that it is a British Virgin Island corporation, and that this Court has

no jurisdiction over it. The Committee responded that ProConsult had, on March 12, 2004, submitted an objection to the Committee's Plan and thus had voluntarily submitted to the Court's jurisdiction. At that point the Committee offered ProConsult a brief period of time in which to answer its discovery demands. ProConsult failed to do so but on October 6, 2006, nonetheless filed a formal response to the Emergency Motions. There, ProConsult sets forth three principal reasons why the Emergency Motions should be vacated and the Shares released. First, ProConsult argues that the Plan has become effective, that the Committee has no standing to bring this proceeding, and this action should be brought, if at all, by the Reorganized Debtors in a non-bankruptcy court. Next, Pro Consult alleges that the Court lacks jurisdiction. Last, ProConsult argues on the merits that the Committee's contentions are entirely "surmise and innuendo" and that no substantive evidence has been presented indicating that ProConsult is in any way the "alter ego" of Mahler.

The principal of ProConsult, Bucherer, submitted a declaration as part of ProConsult's response. There, Bucherer states that in late 2001, he purchased for the account of ProConsult $5 million of First Notes, utilizing his personal funds. In April 2002, Bucherer caused to be purchased and deposited with ProConsult an additional $3 million of First Notes, paying for them partly with his personal funds and partly with a bank loan. He subsequently repaid the loan with his personal funds. Bucherer submitted several exhibits to support his declaration, including a letter from the "Cantonal tax authority of Lucerne" dated September 18, 2006, indicating that Bucherer was the beneficial holder of $8 million of First Notes, and a document that Bucherer had submitted to his bank pursuant to Swiss law indicating his sole ownership of the assets in ProConsult's accounts.

After receipt of these documents, at a hearing on October 19, 2006, the Committee requested a extension of time to conduct further discovery and to "test" the accuracy of Bucherer's statements provided in ProConsult's response. ProConsult's counsel argued against this relief. The Committee further confirmed the nature of the relief it is seeking, specifying that it is proceeding against ProConsult only as garnishee and as the holder of property in which a judgment debtor, Mahler, has an interest. There is no dispute that judgment execution is governed by F.R. Civ. P. 69, made applicable by Bankruptcy Rules 7069 and 9014, which in turn refer to applicable State law. Relevant State law is N.Y. CPLR 5223, 5224, and 5225(b), which govern discovery pursuant to and satisfaction of a judgment by garnishment of property held by a third party in which the judgment debtor has an interest.

For the reasons stated below, the Court finds that the Committee has standing to pursue this action and this Court has jurisdiction to hear it. However, the Committee has failed to meet its initial burden under CPLR 5225, ProConsult and Bucherer are not subject to further discovery, and the restraint on the Shares cannot be further extended and should be terminated.

### Discussion

#### Subject Matter Jurisdiction

ProConsult asserts that this Court lacks subject matter jurisdiction to determine whether the Shares can be frozen and discovery conducted in an attempt to enforce the judgments previously entered by this Court. There is no merit to this contention. "A bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders, par-

ticularly when disputes arise over a bankruptcy plan of reorganization." *Luan Investment S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 230 (2d Cir.2002); *see also Jamaica Shipping Co. v. Orient Shipping Rotterdam, B.V. (In re Millenium Seacarriers, Inc.)*, 458 F.3d 92, 95 (2d Cir.2006). Since the instant proceedings seek to enforce judgments entered by this Court which in turn seek to effectuate a confirmed plan of reorganization, this Court has subject matter jurisdiction to hear them. *Petrie Retail*, 304 F.3d at 231.

Moreover, the Plan and Confirmation Order both provided that

> [t]he Bankruptcy Court shall retain jurisdiction of all matters arising out of, and related to, the Chapter 11 Cases and this Plan pursuant to, and for the purposes of, section 105(a) and section 1142 of the Bankruptcy Code and for, among other things, the following purposes: ... (ii) to determine any other applications, adversary proceedings, and contested matters pending on the Effective Date ... (vii) to issue such orders in aid of execution of this Plan ... (xii) to hear any other matter not inconsistent with the Bankruptcy Code.

Plan § X; Confirmation Order ¶ 28. The instant contested matter was pending on the Effective Date and relates to proceedings to carry out and execute the Plan, and the Court has jurisdiction to hear it. *Hosp. and Univ. Property Damage Claimants v. Johns–Manville Corp. (In re Johns–Manville Corp.)*, 7 F.3d 32, 35 (2d Cir.1993); *U.S. Home Corp. v. Los Prados Community Assoc., Inc. (In re U.S.H. Corp.)*, 280 B.R. 330, 335–36 (Bankr. S.D.N.Y.2002).

ProConsult also erroneously contends that the instant proceedings are non-core. As the Second Circuit has held, "[p]roceedings can be core by virtue of their nature if either (1) the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings, or (2) the proceedings directly affect a core bankruptcy function." *In re United States Lines, Inc.*, 197 F.3d 631, 637 (2d Cir. 1999). (internal citation omitted). In *Petrie Retail*, the creditor argued that the Bankruptcy Court did not have core subject matter jurisdiction to enjoin an action in Puerto Rico involving a lease provision whose interpretation had been contested during the U.S. insolvency proceedings. 304 F.3d at 228. Although the creditor argued that its action was a "post confirmation dispute between two non-debtors," the Second Circuit held that the Bankruptcy Court had core jurisdiction to issue the injunction in connection with plan consummation proceedings since, *inter alia*, the injunction sought to enforce a prior order of the bankruptcy court. *Id.* at 230. The Second Circuit noted that, like the instant case, the dispute was related to rights established in an order entered during the chapter 11 proceedings. *Id.* at 229. Similarly, in *Jamaica Shipping*, 458 F.3d at 95, the Court dealt with the question whether an adversary proceeding relating to a contract dispute was a core proceeding. The Court held that since the initial order concerning the sale of property was core, the subsequent adversary proceeding, which was brought to enforce the initial order, was core as well. The instant matter involves a proceeding to enforce judgments entered by this Court, as well as to enforce the provisions of a plan, core functions that are appropriately before this Court.[2]

---

2. ProConsult also argues that the Committee was required to proceed by adversary proceeding, not motion. Where enforcement of a prior order of the court is at issue, parties are entitled to proceed by motion, so long as due process concerns are satisfied. *See In re*

## Personal Jurisdiction

■ ProConsult next alleges that the Court does not have personal jurisdiction over it, since ProConsult is a foreign entity that never submitted to this Court's jurisdiction. In fact, the record shows some participation by ProConsult and/or Bucherer in these Chapter 11 cases. For example, as a substantial indirect shareholder of the Debtors, Bucherer was made the subject of what purported to be a consensual discovery order, and a company controlled by Mahler and his associates argued that the order should not have provided for Bucherer's deposition in light of his health as well as for jurisdictional reasons. (See Emergency Motion of Vela Gas Investments, Ltd. dated February 11, 2004.) ProConsult later filed an objection to the Committee's Plan as the holder of $8 million in First Notes. Cases have held that a creditor has submitted to the personal jurisdiction of the bankruptcy court even where there were such limited contacts as the filing of a statement of an intent to assert a claim. *See In re Ira Haupt & Co.*, 289 F.Supp. 966, 971 (S.D.N.Y.1968); *see also, Paddington Press, Ltd. v. Hill, Samuel & Co., Ltd. (In re Paddington Press, Ltd.)*, 5 B.R. 343, 345 (Bankr.S.D.N.Y.1980). In any event, ProConsult cannot demand the right to participate as a creditor in a distribution under the Plan and at the same time deny the Court's jurisdiction over such distribution. *See Universal Oil Ltd v. Allfirst Bank (In re Millenium Seacarriers)*, 419 F.3d 83, 98 (2d Cir.2005); *see also*, the decision of the Privy Council cited above, which rejected a similar claim

by Cambridge that it had never subjected itself to the personal jurisdiction of the U.S. court as bearing "little relation to economic reality" and "technical in the highest degree." *Cambridge Gas*, 2006 WL 1546603 at ¶ 8.[3]

## Standing of the Creditors' Committee

■ ProConsult's next argument is that the Committee lacks standing to bring this claim on behalf of the Reorganized Debtors. Pointing to language in the Plan that the Committee "shall be dissolved" on the effective date of the Plan, ProConsult alleges that since the Plan has become effective, the Committee cannot bring the instant action against it. Thus, it contends, even if Mahler had an interest in the Shares, the appropriate party to attempt to enforce the Committee's judgment would be the Reorganized Debtors, not the Committee.

The Committee has standing to pursue this matter. This Court signed an Order to Show Cause with respect to the Committee's motion in aid of judgment enforcement against Mahler on August 9, 2006, the day the plan went effective. As noted above, under the Plan, the Court retains jurisdiction over all matters pending on the Effective Date. Although the Plan went effective on the same day this proceeding was commenced, the law routinely ignores time periods of less than a day. *See United States v. Will*, 449 U.S. 200, 225 n. 29, 101 S.Ct. 471, 66 L.Ed.2d 392 (1980). The Committee had standing on the Effective Date to file the Order to

---

*WorldCorp. Inc.*, 252 B.R. 890, 895 (Bankr. D.Del.2000).

**3.** The decision in the *Cambridge Gas* case holds that bankruptcy jurisdiction, as "a mechanism of collective execution against the property of the debtor by creditors whose

rights are admitted or established," is broad enough to encompass jurisdiction over the holder of shares for purposes of implementing a plan that cancelled and redistributed those shares. *Cambridge Gas*, 2006 WL 1546603 at ¶ 14.

Show Cause and has standing to pursue it now.[4]

*The Committee's Burden under Applicable Law*

The final issue, and ultimately the dispositive one, is whether the Committee is entitled under F.R. Civ. P. 69 and CPLR 5223, 5224, and 5225(b) to a further restraint on the Shares, or to further discovery and an evidentiary hearing.[5] As the Committee acknowledged during the hearing of October 19, 2006, it is seeking an order in aid of enforcement of a judgment under New York State procedures, namely CPLR 5225(b). The Court therefore looks to § 5225(b) to determine whether the Committee has satisfied its burden and justified further restraint of the Shares. If necessary, it considers § 5223, which, together with Rule 5224, "establish discovery procedures that may be used by a judgment creditor seeking to obtain information necessary to enforce a judgment." *Dulce v. Dulce,* 233 F.3d 143, 146 (2d Cir.2000).

Under CPLR 5225(b), a judgment creditor may enforce a judgment by executing on or garnishing property held by a third party, provided that the judgment creditor can satisfy what the Second Circuit has termed a two-step process. *Beauvais v. Allegiance Securities Inc.,* 942 F.2d 838, 839 (2d. Cir.1991). "First, it must be shown that the judgment debtor 'has an interest' in the property the creditor seeks to reach." If that showing is made, then the creditor must show that either the judgment debtor is entitled to possession of the property or that its own rights in the property are superior to the rights of the third party holding it. *Id; see also, United Intl. Holdings, Inc. v. The Wharf (Holdings) Ltd.,* 988 F.Supp. 367, 374 (S.D.N.Y.1997).

The problem the Committee faces is that none of its allegations satisfies the first requirement of § 5225(b) as construed by *Beauvais.* The Committee has not alleged any substantive facts which show that the Shares are actually subject to a beneficial interest held by Mahler, the judgment debtor. The Committee contends that various documents relating to ProConsult bear an address in Lugano, Switzerland, which is the same city in which Mahler resides. However, this connection does not prove anything about Mahler's ownership of the Notes or Shares. The Committee also contends that Peter Shaerf had a conversation with Mahler five years ago, in which they discussed the advisability of Mahler's purchase of First Notes through a nominee in an effort to acquire a "blocking position." Aside from the fact that Mahler decidedly did not obtain a blocking position, this does not provide the missing evidence that Bucherer acted as a nominee or front for Mahler or that the Notes are Mahler's property. Nor is such evidence provided by the fact that Shaerf mentioned Jefferies & Co. in this conversation, and that Bucherer apparently bought his Notes through Jefferies.

In its reply papers, the Committee makes much of the fact that Bucherer, the principal of ProConsult, has been a friend

---

4. No question has been raised as to the Committee's authority to enforce its own Plan, including the contempt proceedings against Mahler. *See Unsecured Creditors Comm. v. Noyes (In re STN Enterprises),* 779 F.2d 901, 904 (2d Cir.1985); *Commodore International, Ltd. v. Gould (In re Commodore International, Ltd.),* 262 F.3d 96, 100 (2d Cir.2001).

5. Although the Committee stated in its Submission that ProConsult had failed to respond to its discovery requests, as of the hearing on October 19 ProConsult had provided documents and an affidavit concerning the ownership of the Shares. The Committee expressed a desire at the hearing to "test" the veracity of the ProConsult and Bucherer responses.

of Mahler and/or Mahler's father, that Bucherer objected to confirmation of the Committee's Plan and supported the Debtors' plan (i.e., Mahler's plan), and that Bucherer has acted as a director of one or more of Mahler's companies. Assuming the truth of each of these allegations, they do not provide evidence to demonstrate that Mahler held a beneficial interest in the ProConsult Notes or that Mahler holds such an interest in the Shares. These allegations tend to show a connection between Mahler and Bucherer, and they may even permit an inference that Mahler suggested the purchase to Bucherer or that Bucherer made the purchase to support Mahler. But ProConsult is not party to this judgment enforcement proceeding on the ground that Bucherer has been a supporter, associate, or friend of Mahler, or a codirector of one or more companies controlled by Mahler. Although the Committee sought and obtained contempt judgments against certain of Mahler's confederates, Bucherer was not among them.

The Committee is pursuing this proceeding against ProConsult only on the theory that the Shares are Mahler's property. It has not only failed to produce evidence of that proposition, but it has produced evidence that Bucherer is a man of substance who would likely have the financial ability to buy $8 million of First Notes. Indeed, in a pleading filed in 2004, the Committee described Bucherer, among other things, as a director of several companies, as the holder of a possible $2.1 million claim against the Debtors, as the "largest holder of the four Principals" who owned interests in the "stalking horse" purchaser under the plan of reorganization proposed by the Debtors, and as the guarantor of $40 million in loans to the stalking horse. (See Resp. of the Official Committee dated Feb. 23, 2004, p. 11.) All of the facts adduced by the Committee are consistent with the proposition that Bucherer was in a position to buy Notes himself and not as the nominee of another. The requirement of *Beauvais* that the judgment creditor first show that the judgment debtor has an interest in the property the creditor seeks to garnish has not been met.

As for the Committee's demand to take further discovery, CPLR 5223 provides that a "judgment creditor may compel disclosure of all matter relevant to the satisfaction" of an unsatisfied judgment through service of a subpoena. The Committee has provided no support for the proposition that under New York law—or under Bankruptcy Rule 9016, incorporating F.R. Civ. P. 45, which looks to State law—it could serve such a subpoena on a third party such as ProConsult or Bucherer outside of this country. N.Y. Judiciary Law § 2–b; *see* Siegel, *Supplementary Practice Commentaries to CPLR 5224* (McKinney's 2006 Cumulative Pocket Part 2006); 9A Wright, Miller & Marcus, *Federal Practice and Procedure* § 2462 (2d ed.1994). Even though the Court has found, as discussed above, that ProConsult submitted to the Court's jurisdiction by demanding its distribution under the Plan, the Committee did not provide in its Plan that a Noteholder seeking a distribution would be required to prove its *bona fides*. Indeed, the Amended Bar Order that the Committee entered in these cases after disputes had arisen with the Debtors provided that holders of the First Notes did not even have to file individual proofs of claim. This is not a case where the movant has provided detailed allegations tending to show fraudulent transfers of property from the judgment debtor to a closely related third party. *Compare, Credit Lyonnais, S.A. v. SGC Int'l, Inc.,* 160 F.3d 428 (8th Cir.1998); *U.S. v. Neumann,* 1999 WL 156151 (D.Mass. March 5, 1999). Under the circumstances the Committee has

not made a sufficient showing to require ProConsult or Bucherer to submit to further disclosure relating to distribution of the shares.

### Conclusion

Although this Court has jurisdiction to enforce the judgments of contempt, and the Committee has standing to prosecute these claims, the Committee has not satisfied its burden under CPLR 5225(b) to justify further restraint on the Shares or to obtain discovery pursuant to CPLR 5223 or 5224 or F.R. Civ. P. 45. ProConsult should settle an order on five days' notice providing for denial of the relief sought by the Committee and termination of the restraint on the Shares.