**LIBERTY MUTUAL INSURANCE, COMPANY, Plaintiff,**

v.

**LONE STAR INDUSTRIES, INC., et al., Defendants.**

**No. 3:04CV379(PCD).**

United States District Court, D. Connecticut.

July 16, 2004.

Kenneth G. Williams, Gordon, Muir &
Foley, Patty G. Swan, Gordon, Muir &

Foley, Hartford, CT, Robert L. Hoegle, Carter, Ledyard and Milburn LLP—DC, Washington, DC, for Plaintiff.

Catherine A. Mohan, McCarter & English–Htfd, James F. DeDonato, McCarter & English–Htfd, Hartford, CT, Matthew Michael Hausman, Pullman & Comley, Thomas F. Maxwell, Jr., Pullman & Comley, Bridgeport, CT, Patricia B. Santelle, White & Williams LLP, Philadelphia, PA, Darren E. Sinofsky, Morrison Mahoney LLP, Joel M. Fain, Morrison, Mahoney & Miller, LLP, Hartford, CT, Richard C. Cavo, Litchfield Cavo, Thomas C. Clark, Litchfield Cavo, Avon, CT, Charles A. Deluca, Ryan, Ryan, Johnson & Deluca, R. Kelley Franco, Ryan, Ryan, Johnson & Deluca, Stamford, CT, David S. Monastersky, Howd & Ludorf, Joseph Bree Burns, Rome McGuigan Sabanosh, Hartford, CT, Michael J. Balch, Skadden, Arps, Slate, Meagher & Flom—NY, Lauren G. Rasmus, Dorsey & Whitney LLP, Patrick J. Feeley, Dorsey & Whitney LLP, New York, NY, Patrick M. Noonan, Delaney, Zemetis, Donahue, Durham & Noonan, Guilford, CT, Jason M. Price, Shipman & Goodwin–ConstPlza–Htfd, Hartford, CT, Michael J. Smith, Cozen O'Connor–PA, W. Conshohocken, PA, Robert L. Wyld, Shipman & Goodwin–ConstPlza–Htfd, Hartford, CT, William P. Shelley, Cozen O'Connor P.C.—PHIL, Philadelphia, PA, Carol J. Banta, Wilmer, Cutler, Pickering, Hale & Dorr DC, Washington, DC, Charles L. Kerr, Morrison & Foerster, New York, NY, Craig Goldblatt, Wilmer, Cutler, Pickering, Hale & Dorr DC, Washington, DC, Jeffrey J. Tinley, Tinley, Nastri, Renehan & Dost, Waterbury, CT, Jin Hee Lee, Morrison & Foerster—NY, New York, NY, Neal Patrick Rogan, Depanfilis & Vallerie, Norwalk, CT, John F. Conway, Loughlin, FitzGerald, Kamp, Henrici Molloy, Rizzo & Reed, Wallingford, CT, Daniel P. Scapellati, Halloran & Sage, Lori Rittman Clark, Sabia & Hartley, LLC, Hartford, CT, Salvatore A. Pellegrino, Clausen Miller, PC—IL, Chicago, IL, Donald J. Marchesseault, Bingham McCutchen LLP, Matthew M. Horowitz, Wolf, Horowitz, Etlinger & Case, Michael C. D'Agostino, Bingham McCutchen, Stuart D. Rosen, Bingham McCutchen, Louis B. Blumenfeld, Cooney, Scully & Dowling, Janet Marie Helmke, Edwards & Angell–HTFD–CT, Mark B. Seiger, Edwards & Angell, Stephen V. Manning, O'Brien, Tanski & Young, Jeffrey F. Gostyla, Halloran & Sage, Hartford, CT, for Defendants.

## RULING ON MOTIONS TO REMAND AND TRANSFER VENUE

DORSEY, Senior District Judge.

Plaintiff Liberty Mutual[1] moves to remand [Doc. No. 115] this action to state court. Defendant Lone Star opposes this Motion and moves to transfer [Doc. No. 8] this case to the Southern District of New York. For the reasons stated below, Liberty Mutual's Motion to Remand is granted

1. Liberty Mutual's Motion requests remand and in the alternative that this Court abstain. Old Republic Insurance also files a Motion to Remand or, in the Alternative, to Abstain [Doc. Nos. 46, 103], as do Underwriter's at Lloyd's London [Doc. No. 64], Mt. McKinley Insurance Company [Doc. No. 82], and Hartford Accident and Indemnity Company, et al. [Doc. No. 120]. Furthermore, Defendant Northern Assurance Company of America seeks leave to join [Doc. No. 166, 167] in Hartford Accident and Indemnity Company, et al.'s Motion, as do Government Employees Insurance Company and Republic Insurance Company [Doc. No. 168]. Although the focus of this Ruling will be on Plaintiff's Motion, the others are addressed by implication and where appropriate their arguments will be resolved.

and Lone Star's Motion to Transfer is therefore denied as moot.

## I. BACKGROUND:

Liberty Mutual Insurance Company ("Liberty Mutual") filed this action in Connecticut Superior Court seeking a declaratory judgment with respect to Liberty Mutual's liability for defense and indemnity costs in thousands of silica bodily injury claims now pending against Defendant Lone Star Industries, Inc. ("Lone Star"). Also named are over 30 insurers that Liberty Mutual contends also provided coverage to Lone Star and whose obligations Liberty Mutual seeks to determine. Lone Star removed the case to federal court asserting subject matter jurisdiction by virtue of the bankruptcy proceedings in which it was engaged over ten years ago in the Southern District of New York.[2] The case was ordered closed in 1995. It was reopened in 1996 and 1997 and again ordered closed in 1999.

Although purportedly not the motivation for Lone Star's bankruptcy filing, among the issues addressed in a 1994 settlement agreement between Liberty Mutual and Lone Star ("Settlement Agreement") were liabilities pertaining to silicosis exposure and claims arising from that exposure. The Settlement Agreement divided silicosis claims into three categories: Prior, Future, and Subsequent Silicosis Claims. For the purposes of this Ruling, only Future and Subsequent Claims need be discussed.

Future silicosis claims are defined as:

additional silicosis claims arising after the effective date of this Settlement Agreement, which claims will similarly arise out of the claimants' alleged pre-petition exposure to silica and in connec-

tion with Lone Star's pre-petition sale of sand for blasting operations and/or in connection with the claimants' pre-petition use of other silica related products or silica related operations. Those silicosis claims which are not reported to the Debtors or to any of their insurers as of the effective date of this Agreement are hereinafter referred to as "Future Silicosis Claims."

*Liberty Mutual Mem. Supp. Remand, Exh. F at 5.* The Settlement Agreement established a fund for the administration, defense, and indemnity of "Future Silicosis Claims" asserted against Lone Star. In the event the fund is exhausted, the Settlement Agreement provides that any silicosis claims raised thereafter will be known as "Subsequent Silicosis Claims." Subsequent Silicosis Claims are defined as:

Silicosis claims initially reported, either orally or in writing, to Liberty Mutual, Helmsman and/or Lone Star or other insurers of Lone Star after the exhaustion of the Fund ... but only if such silicosis claims also allege latent bodily injury, sickness or disease alleged to arise out of pre-petition exposure to free silica and in connection with the claimant's pre-petition use of other silica related products or silica related operations.

*Liberty Mutual Mem. Supp. Remand, Exh. F at 15,* The Settlement Agreement also provides that Subsequent Silicosis Claims

shall be handled by Lone Star's insurers pursuant to the terms and conditions of Lone Star's applicable insurance policies and, unless discontinued by the participating insurance carriers, pursuant to the current arrangement among the carriers with respect to Prior Silicosis Claims (the "Current Insurance Ar-

---

**2.** More specifically, Lone Star filed for bankruptcy protection approximately thirteen years ago, emerging from that process roughly ten years ago.

rangement"). Subsequent Silicosis Claims will be handled pursuant to the insurance programs, subject to the terms and conditions thereof...
*Liberty Mutual Mem. Supp. Remand, Exh. F at* 16. Under the Current Insurance Arrangement, Lone Star's insurers share indemnity on a pro rata basis from the date of first exposure through the date of manifestation of the alleged injury. *Liberty Mutual's Mem. Supp. Remand* at 10.

The Settlement Agreement and the administration of the fund for Future Silicosis Claims operates "without prejudice to the rights of Liberty Mutual or Lone Star under any insurance policy issued by Liberty Mutual to Lone Star or to the positions or interpretations which may be asserted by either thereunder" except insofar as they "are waived, closed or final pursuant to the terms of this Agreement or any other agreement between the parties." *Liberty Mutual Mem. Supp. Remand, Exh. F at* 21. Nothing in the Settlement Agreement "shall be deemed to expand or contract the substantive coverage provided by the Policies nor to alter the limits thereof." *Liberty Mutual Mem. Supp. Remand, Exh. F at* 22. Lone Star "and all other Insured Parties and the Joint Ventures shall remain obligated to fulfill all non-premium related conditions under the Policies, including but not limited to the provisions relating to notice, cooperation and reimbursement of deductible and retention advances." *Liberty Mutual Mem. Supp. Remand, Exh. F at* 19.

Subsequent Silicosis Claims will be handled by the insurers "pursuant to the terms and conditions of Lone Star's applicable insurance policies." *Liberty Mutual Mem. Supp. Remand, Exh. F at* 16. Lone Star is generally exempt from paying any "additional silicosis related premiums generated under any pre-petition policy..." *Liberty Mutual Mem. Supp. Remand, Exh. F at* 16. However,

> Liberty Mutual shall have the right to open the pre-petition premium plans to the extent non-conformance with the Current Insurance Arrangement or the current allocation of claims results in additional silicosis-related retrospective premium not already allowed within this Agreement as part of Liberty Mutual's proof of claim. Lone Star agrees to pay any such premium consistent with the terms and conditions for pre-petition Policies and related premium plans.

*Liberty Mutual Mem. Supp. Remand, Exh. F at* 16–17.

Liberty Mutual now alleges that, pursuant to the Settlement Agreement, Helmsman has "administered, defended and/or settled hundreds of Future Silicosis Claims." *Liberty Mutual Mem. Supp. Remand* at 11. As a consequence, the Fund was exhausted in 2000. *Liberty Mutual Mem. Supp. Remand* at 11. However, Liberty Mutual contends that it has continued to defend or indemnify Lone Star for Subsequent Silicosis Claims, paying the full cost of such defense with no contribution from any other insurer. Accordingly, Liberty Mutual filed the Connecticut action seeking a declaration of its rights under state law as it pertains to the applicable insurance contracts. Lone Star removed at least part of the action asserting "arising under," "arising in," and "related to" jurisdiction. *Notice of Removal* at 2.

Subsequently, both Liberty Mutual and Lone Star have sought to reopen the Lone Star bankruptcy case. Lone Star's motion was denied pending resolution of the issues before this Court. Liberty Mutual's motion to reopen to clarify the scope of Lone Star's discharge was granted. Specifically, Liberty Mutual has requested a declaration that, among other things,

"Subsequent Silicosis Claims were not discharged" or that "Lone Star's obligations [as they pertain to Subsequent Silicosis Claims] are governed solely by state law." *Liberty Mutual's Mem. Supp. Remand, Exh. C* at 17–18. That matter is pending before Bankruptcy Judge Hardin in the Southern District of New York. Lone Star's intention in seeking to transfer venue is to bring this action before Judge Hardin as well.

## II. STANDARD OF REVIEW:

### A. Motion to Remand:

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441 (2004). 28 U.S.C. § 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1452 provides, with respect to "claims related to bankruptcy cases[,]" that a "party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending."

 Like other jurisdictional statutes, 28 U.S.C. § 1441 is strictly construed. *Whitaker v. Am. Telecasting, Inc.,* 261 F.3d 196, 201 (2d Cir.2001), *citing Lupo v. Human Affairs Int'l Inc.,* 28 F.3d 269, 274 (2d Cir.1994). The removing party bears the burden of demonstrating the existence of federal subject matter jurisdiction. *United Food & Commercial Workers Union, Local 919 v. CenterMark Properties Meriden Square,* 30 F.3d 298, 301 (2d Cir. 1994) (citation omitted). Questions as to whether federal jurisdiction exists are resolved against removability. *Lupo v. Hu-*

*man Affairs Int'l,* 28 F.3d 269, 274 (2d Cir.1994).

## III. DISCUSSION:

For the reasons stated below, there is no jurisdiction to adjudicate any state law claims which have not been discharged through the prior bankruptcy proceedings. Accordingly, there is no reason to address Lone Star's Motion to Transfer Venue and the only arguments which are addressed below are those pertaining to the Motion to Remand.

### A. General Principles of Bankruptcy Jurisdiction:

"[D]istrict courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b) (LEXIS 2004). The district courts also have the authority to refer to a bankruptcy judge any action "arising under title 11 [11 USCS §§ 101 et seq.] or arising in or related to a case under title 11." 28 U.S.C. § 157(a) (LEXIS 2004) (brackets in original). In turn, bankruptcy judges may also hear "all core proceedings arising under title 11 [11 USCS §§ 101 et seq.], or arising in a case under title 11 [11 USCS §§ 101 et seq.], referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title." 28 U.S.C. § 157(b)(1) (brackets in original). A bankruptcy judge may "hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11[,]" but such proceedings are limited to submitting "proposed findings of fact and conclusions of law to the district court." 28 U.S.C. § 157(c)(1). Any final order shall therefore "be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters

to which any party has timely and specifically objected." *Id.*

The core/non-core distinction has significance only with respect to "related to" claims, while "arising under" and "arising in" jurisdiction must involve core proceedings. *See S.G. Phillips Constructors, Inc. v. City of Burlington (In re S.G. Phillips Constructors, Inc.),* 45 F.3d 702, 708 (2d Cir.1995) (Stating that mandatory abstention applies only to non-core matters and thus "not arising under title 11 or arising in a case under title 11") (citations omitted). It does not, however, determine jurisdiction inasmuch as districts courts have the power to hear and adjudicate any matter invoking arising under, in, or related to bankruptcy jurisdiction. Rather, the distinction affects the finality of the bankruptcy court's determination, requiring de novo review by the district court of any proposed findings issued by the bankruptcy court on the basis of its related to jurisdiction. 28 U.S.C. § 157(c)(1). Nevertheless, the distinction has some usefulness in illustrating the scope of bankruptcy jurisdiction. *See United States Lines, Inc. v. American S.S. Owners Mut. Protection & Indem. Ass'n (In re United States Lines, Inc.),* 197 F.3d 631, 637 (2d Cir. 1999) (" '[C]ore proceedings' should be given a broad interpretation that is 'close to or congruent with constitutional limits' ") (citation omitted).

■■■ Jurisdiction is, however, curtailed in cases such as this one where the bankruptcy reorganization plan has already been confirmed. "After a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan." *Bank of La. v.*

*Craig's Stores of Texas, Inc. (In re Craig's Stores of Tex., Inc.),* 266 F.3d 388, 390 (5th Cir.2001). Thus, bankruptcy jurisdiction essentially extends only until a debtor's plan of reorganization has been confirmed. *Hospital & Univ. Property Damage Claimants v. Johns–Manville Corp. (In re Johns–Manville Corp.),* 7 F.3d 32, 34 (2d Cir.1993). A bankruptcy court can, however, retain jurisdiction "to the extent provided in the plan of reorganization." *Id.* (citations omitted). Consistent with this principle, "a bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders, particularly when disputes arise over a bankruptcy plan of reorganization." *Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.),* 304 F.3d 223, 230 (2d Cir.2002). Such jurisdiction may be "limited to the enforcement of the rights established by the orders of the bankruptcy court and the resolution of issues raised in the reorganization." *Id.* at 231. Additionally, the plan's retention of jurisdiction must not exceed the bounds of Article III. *See N. Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 76, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (Congress cannot remove "the essential attributes of the judicial power" from the Art. III district court" and vest "those attributes in a non-Art. III adjunct"); *Thomas v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568, 584, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985) (Interpreting *Marathon* to hold that "Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without consent of the litigants, and subject only to ordinary appellate review").[3]

---

**3.** In this vein, Lone Star makes much of Liberty Mutual's filing of a proof of claim to demonstrate that the proceedings here are core proceedings. *Lone Star's Mem. Opp. Mot. to Remand* at 10–13. On the face of the argument, it is unclear what the substance of

Here, the Reorganization Plan provides for expansive post-confirmation jurisdiction, going as far as is "legally permissible." *Lone Star's Mem. Opp. Remand* at 18. Accordingly, Lone Star argues that "[i]t is beyond peradventure that the Bankruptcy Court retained jurisdiction to determine disputes regarding the compromises and releases in the Settlement Agreement, and nothing in the effect of Plan confirmation has done anything to divest the Court of that jurisdiction." *Lone Star's Mem. Opp. Remand* at 19. Given that the bankruptcy court clearly sought to retain any jurisdiction that is legally permissible, the inquiry necessarily hinges on whether the applicable law provides federal jurisdiction in this Court over the claims at issue.

### 1. *Arising Under and Arising In Jurisdiction:*

Claims that "arise under" title 11 are those cases that "clearly invoke substantive rights created by bankruptcy law." *Glinka v. Federal Plastics Mfg. (In re Housecraft Indus. USA, Inc.)*, 310 F.3d 64, 70 (2d Cir.2002); *see also Wood v. Wood (In re Wood)*, 825 F.2d 90, 96 (5th Cir. 1987) (Arising under describes "those proceedings that involve a cause of action created or determined by a statutory provision of title 11"). By contrast, arising in proceedings are "those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *In re Wood,* 825 F.2d at 97.

■ It is not the case that, on its face, the action filed in Connecticut invokes substantive statutory rights under bankruptcy law. The Settlement Agreement is, of course, described in detail throughout the Complaint, but even by its own terms, the Agreement "shall not serve as precedent and shall not be taken as a standard by which other matters may be judged." *Liberty Mutual Mem. Supp. Remand, Exh. F* at 21. Lone Star has not pointed to any law altering, with respect to bankruptcy law, the "well-pleaded complaint rule," or the requirement that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). Thus, even if there is a defense to the action involving substantive statutory bankruptcy law, that is not a basis for removal. *Id.* at 393, 107 S.Ct. 2425.

Whether there is arising in jurisdiction hinges on Liberty Mutual's narrow construction of its case to include state law contract claims, which it argues were preserved. With this in mind, it is difficult to see how this action would have no existence outside of the bankruptcy proceedings. Lone Star argues that "because [its] alleged liability to Liberty Mutual [with] respect to the underlying pre-petition insurance coverage block was substantively

---

the proof of claim is and when it was filed. Liberty Mutual's Reply Brief clarifies that this is the proof of claim originally filed and resolved by the Settlement Agreement a decade ago. *Liberty Mutual Reply Br.* at 6. Nevertheless, Lone Star argues that this demonstrates that Liberty Mutual "submitted itself to the Bankruptcy Court's jurisdiction." *Lone Star's Mem. Opp. Mot. to Remand* at 10. While this would amount to a consent to the bankruptcy court's jurisdiction (a decade ago in a closed case) it does not by itself confer federal jurisdiction. *See e.g. Commodity Futures Trading Com. v. Schor,* 478 U.S. 833, 851, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986) (When "Article III limitations are at issue, notions of consent and waiver cannot be dispositive..."); *United States v. Griffin,* 303 U.S. 226, 229, 58 S.Ct. 601, 82 L.Ed. 764 (1938) ("[L]ack of jurisdiction of a federal court touching the subject matter of the litigation cannot be waived by the parties...").

altered by the Settlement Agreement, the Plan, and the Bankruptcy Court orders approving the Settlement Agreement and confirming the Plan" the "Connecticut Action is uniquely affected, and indeed governed, by the bankruptcy proceedings." *Lone Star's Mem. Opp. Remand* at 10. This is true only inasmuch as Liberty Mutual was a party to the proceedings and is therefore bound by it as it would be by any prior determination. In this sense, it has a preclusive effect on any future filings, but it is misleading to state that the Connecticut action is governed as if it constituted substantive law to which courts would be subject.

To be sure, the Settlement Agreement altered the manner for processing silicosis claims, but Liberty Mutual asserts that the Settlement Agreement "preserved" the state law claims by leaving them to the contracts. *Liberty Mutual's Mem. Supp. Remand* at 17. As such, the contracts and therefore Liberty Mutual's rights (and others') thereunder would exist regardless of the bankruptcy proceedings. The argument is then that the division of silicosis claims in Prior, Future, and Subsequent Silicosis Claims altered the manner of their adjudication as a whole and eliminated some claims, but did not create substantive rights themselves such that the claims would not exist outside of bankruptcy.

■ However, because, pursuant to 28 U.S.C. § 157(b)(2), the "allowance or disallowance of claims against the estate" is a core proceeding, *Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.)*, 896 F.2d 1384, 1389 (2d Cir.1990), Lone Star argues that arising in or under jurisdiction must exist to adjudicate the claims at issue here. The problem with this argument is that the decision to allow or deny the claims has, in effect, been made by the terms of the Settlement Agreement and Reorgani-

zation Plan. The fact that the bankruptcy court had the jurisdiction to decide and did decide whether to allow these claims against the estate does not necessarily provide a jurisdictional hook to adjudicate the claims themselves—should they have been preserved. The only action needed is to interpret the relevant orders. Indeed, Liberty Mutual has reopened the bankruptcy proceeding to resolve this very question, seeking a declaration that, among other things, "Subsequent Silicosis Claims were not discharged" or that "Lone Star's obligations [as they pertain to Subsequent Silicosis Claims] are governed solely by state law." *Liberty Mutual's Mem. Supp. Remand, Exh. C* at 17–18. In this context, there is no real doubt that a bankruptcy court retains jurisdiction to interpret its own orders, even post-confirmation. *In re Petrie Retail, Inc.*, 304 F.3d at 230. Liberty Mutual in fact argues that the bankruptcy proceeding it has initiated arises in or is related to the original bankruptcy action. *See Liberty Mutual's Mem. Supp. Remand, Exh. C* at 1 ("This Court [i.e. the bankruptcy court] has jurisdiction over this action . . . because this adversary proceeding arises in or is related to the chapter 11 case . . ."). But all this does not establish that the underlying contract claim is a core proceeding.

In the alternative, Lone Star suggests that the contract proceeding itself is core. *Lone Star Mem. Opp. Remand* at 10. "Whether a contract proceeding is core depends on (1) whether the contract is antecedent to the reorganization petition; and (2) the degree to which the proceeding is independent of the reorganization. The second prong of the inquiry hinges on the nature of the proceeding. Proceedings can be core by virtue of their nature if either (1) the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings, . . . or (2) the proceedings

directly affect a core bankruptcy function." *In re Petrie Retail, Inc.*, 304 F.3d at 229 (ellipses in original) (internal citations and quotations omitted). Subsequent Silicosis Claims are, by definition, not antecedent to the reorganization petition. Nevertheless, despite the fact that the full nature of the bankruptcy proceedings has not been described or explained to this Court, it does not seem unreasonable to assume that the administration of silicosis claims and, as a consequence, the potential if not actual contract claims related to them were a core proceeding. Although, the claims are in principal independent of the bankruptcy proceedings, they are uniquely affected by the proceedings and arguably tied to the administration of the estate. Thus, the decision of what to do with these claims was very much part of the bankruptcy proceedings.[4] However, as with the allowance of claims, the bankruptcy court has already made that decision and what is left is to interpret that decision. If Lone Star, Hartford Casualty, and others, are correct in their interpretation of those orders, the bankruptcy court chose to leave Subsequent Silicosis Claims subject to the applicable insurance contracts. This case then is a basic, if potentially complicated, state law contract claim.

Thus, even if the bankruptcy court had the jurisdiction to allow or deny the claims and currently has jurisdiction to resolve the interpretation question, even to enforce its orders, *Id.* at 230, the fact that this jurisdiction existed does not resolve the question of the status of the purported state law claims and, as a consequence whether to remand this action. Everything then hinges on the interpretation of

the prior bankruptcy proceedings. However, this Court, at least with respect to the scope of discharge and whether the claims were in fact preserved, is not in a position to interpret the bankruptcy orders.

As is clear, Lone Star is making arguments before the bankruptcy court that the claims are discharged or otherwise handled. The Settlement Agreement has been attached however, the issue has not been fully briefed. Thus, although Lone Star argues that the "Settlement Agreement resolved allocation issues, the question of Lone Star's and its carriers' respective liabilities, and issues regarding relevant insurance coverage block[,]" *Lone Star Mem. Opp. Remand* at 11–12, Lone Star has not detailed those arguments in its briefs and it is impossible to evaluate them here. But even if it had, those issues are presently before the bankruptcy court and are clearly within its jurisdiction. Accordingly, this Court would take no position on the arguments regardless of whether they were presented. The unfortunate consequence of this fact is that this Court must engage in some speculation to resolve the issue of what to do with the potential state law claims—should they have survived.[5]

Based on what is before this Court, there are two possible outcomes to this litigation. Either, the state law claims have been discharged or otherwise dealt with or they have not. In the first instance, the case that is currently pending would become a nullity, as there would be no state law claims and Liberty Mutual has made it very clear that its claim is

---

4. This is not to say, however, that the current question of interpretation is or is not a core determination. As stated, the bankruptcy court would have the jurisdiction to make the interpretation, but this Ruling takes no position on the nature of that jurisdiction.

5. This uncertainty itself weighs in favor of remand. *See Lupo*, 28 F.3d at 274 (Questions as to whether federal jurisdiction exists are resolved against removability).

premised on the argument that the Settlement Agreement preserved certain state law contract claims. In that instance, the bankruptcy court would presumably resolve the issue of contribution based on the terms of the reorganization. Thus, without such claims, there is essentially no action to adjudicate here. If the claims were not discharged (or otherwise dealt with), and Liberty Mutual is correct that they have been left to the insurance contracts, the connection to the bankruptcy proceedings would have been severed by the bankruptcy court and subject to Connecticut law. Under those circumstances, arising in jurisdiction would not exist. In either case, bankruptcy jurisdiction is properly "limited to the enforcement of the rights established by the orders of the bankruptcy court and the resolution of issues raised in the reorganization" not the adjudication of any preserved state law claims. *In re Petrie Retail, Inc.*, 304 F.3d at 231.

■ Lone Star's arguments amount to the proposition that simply because the bankruptcy court could have discharged the claims (i.e. it is a core proceeding to allow or disallow a claim) there is arising in jurisdiction and that simply because it is necessary to interpret the bankruptcy court's orders to determine if they survive, the claims owe their existence to bankruptcy proceedings and therefore arise in. This is not the case. While these claims could have been discharged in bankruptcy, the fact that they were not does not mean that the claims would not exist outside of bankruptcy, or otherwise owe their existence to the bankruptcy proceedings. *See*

*e.g. In re Wood*, 825 F.2d at 97 ("[T]his suit is not a proceeding that could arise only in the context of a bankruptcy. It is simply a state contract action [6] that, had there been no bankruptcy, could have proceeded in state court"); *Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.*, 130 B.R. 405, 407 (S.D.N.Y., 1991) ("This action consists of Drexel's insurance coverage claims against the defendants and is not dependent for its existence on Drexel's Chapter 11 cases, and can exist outside of those cases"). There is therefore no arising in jurisdiction to adjudicate any surviving state law claims.

### 2. Related To Jurisdiction:

Related to jurisdiction exists when the matter has a "significant connection" to a bankruptcy proceeding. *In re Turner*, 724 F.2d 338, 341 (2d Cir.1983). The "test for determining whether litigation has a significant connection with a pending bankruptcy proceeding is whether its outcome might have any 'conceivable effect' on the bankrupt estate." *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir.1992). The apparent breadth of related to jurisdiction has been attributed to Congress' intention "to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate" and that it must be read to reach "more than simply proceedings involving the property of the debtor or the estate." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995). This jurisdiction cannot, however, "be limitless." *Id.* In keeping with

---

6. The mere fact that a claim involves state law issues is not dispositive. 28 U.S.C. § 157(b)(3). However, given that the reorganization plan has been confirmed and the estate thus disappeared, it is difficult to see how "the [state law] proceedings directly affect a core bankruptcy function[,]" *In re Petrie*

*Retail, Inc.*, 304 F.3d at 229, or for that matter, how, by virtue of the fact that the division of silicosis claims into different categories would affect those claims that do go forward, there is any justification for a bankruptcy court to adjudicate the state claims at this late stage.

the latter observation, "[a]fter a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan." *In re Craig's Stores of Tex., Inc.*, 266 F.3d at 390.

In this case, no one disputes that interpretation of the Settlement Agreement and any other related bankruptcy order is necessary to adjudicating the claim. For Lone Star, this alone establishes, at the very least, related to jurisdiction. *See Lone Star's Mem. Opp. Remand* at 14 ("the interpretation of the Settlement Agreement and the releases granted therein, and the creation and exhaustion of the Future Silicosis Claims Fund all will be issues that this Court will have to treat before determining the putative state-law contribution questions"). Liberty Mutual argues that this is not a basis for federal jurisdiction as Connecticut courts have "jurisdiction to interpret not only the insurance contracts of Liberty Mutual and Lone Star's thirty-five other insurers, but also the effect, if any, of the 1994 Settlement Agreement upon the Liberty Mutual Policies." *Liberty Mutual Reply Br. Supp. Remand* at 6, *citing Icco Design/Build v. Sunbrite Cleaners (In re Sunbrite Cleaners, Inc.)*, 284 B.R. 336, 342 (N.D.N.Y., 2002) ("State courts are fully capable of interpreting a confirmed plan to determine whether a particular claim has been discharged"). Furthermore, Liberty Mutual and Hartford Accident and Indemnity, et al., counter that because the reorganization plan has been confirmed, there is no bankruptcy estate, and there can be no related to jurisdiction. *Liberty Mutual's Mem. Supp. Remand* at 14–16; *Hartford Accident and Indemnity, et al. Mem. Supp. Remand* at 7–12.

■ While Liberty Mutual's argument concerning the interpretive powers of state courts is somewhat undermined by its assertion that the bankruptcy court has "arising in" or "related to" jurisdiction to determine whether the claims have been discharged, this is not dispositive for the same reason there is no arising in jurisdiction.[7] Lone Star, in effect, asks this Court to find that federal jurisdiction exists simply by virtue of the necessity of interpreting the Settlement Agreement and/or Plan of Reorganization, which are not substantive federal law. Furthermore, as discussed above, there are only two possible results from such an analysis—either there are state law claims unaffected by the bankruptcy proceedings or there are not. In the latter case, Liberty Mutual's case here would be a nullity. In the former, there is no effect on the bankruptcy estate, which has ceased to exist anyway, because the case is resolved by the terms of the discharge or it is a state law claim untouched and not part of the bankruptcy proceeding—even if the bankruptcy proceedings provide the framework for determining what claims are unaffected. Accordingly, the matter is best likened to a question of res judicata, or an injunction, in which the state court will have to interpret which aspects of the settlement are in effect preclusive. Even that contingency is somewhat muted by the fact that the only question relevant to the bankruptcy proceedings (i.e. the question of discharge) is going to be resolved by the bankruptcy court in New York and this will provide guidance to the state court as to how to proceed with the state law claim. There is

---

7. Furthermore, Liberty Mutual's assertion that the bankruptcy court has jurisdiction would not by itself create it and the assertion would not be binding on the other Defendants disputing jurisdiction, none of whom were party to the original bankruptcy action.

therefore no basis for related to jurisdiction.

### 3. There is no bankruptcy jurisdiction over the state law claims asserted:

While a bankruptcy court, and thus this district court, would have jurisdiction to interpret its own orders, this jurisdiction does not extend to the state law claims Liberty Mutual argues were preserved by the Settlement Agreement. Because any question concerning discharge or the otherwise prior resolution of the state law claims Liberty Mutual has raised should be resolved by Judge Hardin in the Southern District of New York and the issue has not been fully briefed in the proceedings before this Court, no position is taken on the merits of Liberty Mutual or Lone Star's arguments with respect to discharge. To the extent that any state law claims have been preserved, there is no federal bankruptcy jurisdiction over those claims under any theory of bankruptcy jurisdiction.

### B. Supplemental Jurisdiction:

Lone Star argues that if this Court finds that Liberty Mutual has asserted cognizable state law claims, supplemental jurisdiction exists to adjudicate the claims. *Lone Star Mem. Opp. Remand* at 19. As Hartford's reply brief suggests, it is not clear to what extent a bankruptcy court can exercise supplemental jurisdiction over state law claims. *Hartford Accident and Indemnity Reply Br.* at 8, n. 8; *see also Masterwear Corp. v. Rubin Baum Levin Constant & Friedman (In re Masterwear Corp.)*, 241 B.R. 511, 517 (Bankr.S.D.N.Y. 1999) (discussing supplemental jurisdiction in bankruptcy courts). It is however clear that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental ju-

risdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Thus, this Court's power to adjudicate state law claims through supplemental jurisdiction is not in question. However, in order to exercise such jurisdiction the "state and federal claims must derive from a common nucleus of operative fact" and be such that a court would "ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Lone Star asserts that because one must interpret the bankruptcy discharge and any other related issue, the "claims are inextricably intertwined." *Lone Star Mem. Opp. Remand* at 19. While there may be common legal questions, those are resolved by the discharge question and once that determination is made, there are no common factual questions. Adjudicating any preserved state law claims, should they exist, would hinge factually on the operative contracts and would not, at that point, require reference to any facts pertaining to bankruptcy. There is, therefore, no common nucleus of facts. The bankruptcy proceedings only come into play as a potentially preclusive adjudication of the asserted rights. Accordingly, there is no basis to exercise supplemental jurisdiction over any remaining state law claims.

## IV. CONCLUSION:

For the reasons stated herein, Liberty Mutual's Motion to Remand [Doc. No. 115] is **granted** and Lone Star's Motion to Transfer Venue [Doc. No. 8] is **denied** as moot. As a consequence, the remaining pending Motions seeking remand [Doc. Nos. 46, 64, 82, 103, 120, 166, 167, and 168]

are **granted** as well. However, to the extent that the Motions raise arguments not addressed by this Ruling, the Court takes no position on the merits of those arguments. The matter is remanded and the Clerk shall close the file.

SO ORDERED.