In re Joanne RADCLIFFE, Debtor.

James McCarthy, Plaintiff,

v.

Joanne Radcliffe, Defendant.

Bankruptcy No. 00–22818.
Adversary No. 01–2012.

United States Bankruptcy Court,
D. Connecticut.

Nov. 8, 2004.

Scott M. Schwartz, Farmington, CT, Counsel for Plaintiff.

Joseph L. Schmitt, Cheshire, CT, Counsel for Defendant.

## MEMORANDUM OF DECISION

ROBERT L. KRECHEVSKY,
Bankruptcy Judge.

### I.

### ISSUES

James McCarthy ("the plaintiff"), on January 29, 2001, filed a complaint against Joanne Radcliffe ("the defendant") (together, "the parties"), the debtor in this Chapter 7 case, seeking a judgment that monies which the plaintiff had transferred prepetition to the defendant represented a nondischargeable debt pursuant to (1) Bankruptcy Code § 523(a)(2)(A) (money "obtained by false pretenses, a false representation, or actual fraud")(First Count) and (2) Bankruptcy Code § 523(a)(6) (debt "for willful and malicious injury by the debtor to another entity or the property of another entity") (Second Count). The Third Count of the complaint seeks a declaratory judgment that the defendant holds property (her residence) under a constructive or resulting trust for the benefit of the plaintiff.[1] Following the court's partial denial of the defendant's motion for summary judgment, a hearing on the complaint was held on September 22, 2004, at which time the plaintiff, the defendant and the plaintiff's mother, Mary Lee McCarthy ("Mrs. McCarthy"), were the sole witnesses.

### II.

### BACKGROUND

#### A.

During the summer of 1995, the plaintiff, then aged about 27, and the defendant, then about 40, met and decided to live together in the defendant's rented apartment in Bristol, Connecticut. Both parties' prior marriages had been dissolved, and the defendant's son, Keith ("Keith"), then about six, lived with her. The plaintiff was employed as a self-described home improvement "handyman" and the defendant worked at a mortgage company. The defendant's annual earnings during all times concerned averaged about $39,000 and the plaintiff's annual earnings averaged about $6,000.

The plaintiff and the defendant, in danger of being evicted in 1998 by a foreclosing mortgagee on the Bristol property, decided to purchase a residence in Farmington, Connecticut ("the residence"). Mrs. McCarthy, who is a real estate agent, assisted the parties in locating the residence. The parties agree that they initially intended a joint purchase of the residence, but when advised by a mortgage broker that a lower interest rate mortgage could be secured if the defendant were the sole mortgage borrower due to her superior credit rating compared to that of the plaintiff, they decided that title to the residence would be in the defendant's name only.

Inasmuch as the residence purchase price was $126,000, and the mortgage loan was $100,000, the balance of $26,000 to

---

1. The complaint also contained a Fourth Count which the court dismissed prehearing.

consummate the purchase was derived from the following sources. Mrs. McCarthy loaned the plaintiff $15,000 to be used for the closing. The defendant contributed $6,000 from her pension fund and $3,000 from her savings account. Mrs. McCarthy also contributed her agent's commission to satisfy additional closing obligations. The transfer of the residence to the defendant occurred in July 1998.

Prior to the title closing, Mrs. McCarthy, aware that the parties had discussed getting married at some point, retained an attorney, Paul A. Keily, Esq. ("Keily"), to draft an agreement to "protect" the plaintiff's "equity" in the residence ("the Agreement"). The Agreement reads as follows:

AGREEMENT BY AND BETWEEN JAMES J. McCARTHY (DONOR) AND JOANNE B. RADCLIFFE (DONEE) RE: GIFT FOR THE PURCHASE OF 4 HARLAN ROAD, FARMINGTON, CONNECTICUT (PROPERTY)

Whereas, Donee is going to be buying a property known as 4 Harlan Rd., Farmington, Connecticut, the Property; and

Whereas Donor and Donee are companions and are co-habitating, with the intent that they will have a long term relationship with the possibility of marriage; and

Whereas, Donee needs an additional $15,000.00 to close on the purchase of the Property; and

Whereas, Donor has available said amount needed by Donee

NOW THEREFORE: the parties agree as follows:

1. Donor shall give to Donee $15,000.00 towards the purchase of the Property.

2. Donee shall use said money only for the purchase of the Property.

3. In the event Donor and Donee separate and no longer co-habitate prior to 10 years from even date, Donee promises and covenants to repay Donor said $15,000.00 within 6 months from the date of separation.

4. If the parties inter-marry prior to the expiration of 10 years, the conditions of paragraph 3 shall not apply.

5. Donee acknowledges that Donor is relying upon the promises herein to make gift.

6. If for any reason, Donee does not close on the Property, Donee shall immediately return said $15,000.00 to Donor.

(Exh. 1.)

The plaintiff first submitted the Agreement to the defendant at her place of employment on May 13, 1998, where the parties read and jointly signed it. The defendant had never met with Keily. At the same time and place, the defendant presented to the plaintiff a document she had filled out entitled, "Gift Statement," required by the lending bank as a condition for granting the mortgage loan to the defendant. The Gift Statement reads as follows:

*GIFT STATEMENT*

I, <u>JAMES J. McCARTHY</u> of <u>20 Vine Hill Road</u>
(Name of Donor) <u>Farmington, CT 06032</u>
(City) (State) (Zip)

<u>Fiance [sic]</u> of JOANNE B. RADCLIFFE
Property Address being Purchased <u>4 Harlan Rd., Farmington, CT</u>
(Street) (Town)

Will give (or have given) him or her a gift of *$11,600.00*. This is a bona fide gift and there is no obligation, expressed or implied, to repay this sum

at any time. These funds are available and will be given (or have been given) to:

JOANNE B. RADCLIFFE on 5–13–98
(Donee) (Date Funds Transferred)
 5–13–98
_____ (Date)
(Signature of Donor)

Notice: Any intentional misrepresentation may result in civil liability and/or criminal penalties under Title 18, United States Code, Section 1001, et seq. and Connecticut Public Act 90–184.

(Exh. B.)

After reading the Gift Statement, the plaintiff signed it, and the defendant thereafter presented it to the lending bank for use at the mortgage closing. The parties jointly resided at the residence from July 1998 through October 2000. During this period, the plaintiff, aided by his brother, made repairs and improvements to the residence. The plaintiff estimated the labor value of these improvements at $10,000.

### B.

The defendant filed her Chapter 7 bankruptcy petition on October 23, 2000. Eight days later, police were called to the residence because the plaintiff was attempting to break down a door to a room in which Keith had locked himself. On November 1, 2000, the Connecticut Superior Court issued a "Protective Order" ordering the plaintiff to "refrain from imposing any restraint upon [Keith]" and to "refrain from threatening, harassing, assaulting, . . . [Keith]." (Exh. 5). The plaintiff was also to participate in an anger management program.

The plaintiff left the residence with his belongings on or about November 1, 2000, terminated his relationship with the defendant and requested she repay him for his investment in the residence. The defendant denied any obligation to the plaintiff.

### C.

The court file reveals that the court granted the defendant an uncontested discharge on February 13, 2001 and that the estate trustee has reported no property available for distribution. The defendant's initial bankruptcy schedules did not list the plaintiff as a creditor. The defendant subsequently amended her schedules to list the plaintiff with a claim of $15,000 for an "unsecured Personal Loan." Her asset schedule listed the residence with a fair market value of $140,000, encumbered by a first mortgage of $100,000. Utilizing the Connecticut exemption statute, the defendant claimed a $40,000 exemption in the residence. No objection to the claimed exemption of the residence was ever filed.

### III.

### DISCUSSION RE: FIRST AND SECOND COUNTS

#### A. Burden of Proof

The plaintiff, as the creditor in this nondischargeability proceeding, has the burden of proving, by a preponderance of the evidence, that his claim satisfies one of the discharge exceptions enumerated in Bankruptcy Code § 523(a). *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Further, "exceptions to dischargeability are narrowly construed, an approach that implements the fresh start policy of the Bankruptcy Code." *National Union Fire Insurance Co. of Pittsburgh, Pa. v. Bonnanzio (In re Bonnanzio)*, 91 F.3d 296, 300 (2d Cir.1996) (citations and quotation marks omitted).

## B. First Count— § 523(a)(2)(A)

The plaintiff asserts in the First Count that the defendant is liable to him for $19,450 and that such debt is nondischargeable pursuant to Bankruptcy Code § 523(a)(2)(A) (debt not dischargeable "to the extent obtained by(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition"). Under well-established § 523(a)(2)(A) principles, the plaintiff bears the burden of proof on each of the following five elements ("the five elements"):

(1) the debtor made the representations; (2) at the time [s]he knew they were false; (3)[s]he made them with the intention and purpose of deceiving the creditor; (4) the creditor relied on such representations; (5) the creditor sustained the alleged loss and damage as the proximate result of the representation having been made.... To be actionable, the debtor's conduct must involve moral turpitude or intentional wrong; mere negligence, poor business judgment or fraud implied in law (which may exist without imputation of bad faith or immorality) is insufficient. *Universal Bank, N.A. v. Owen (In re Owen)*, 234 B.R. 857, 860 (Bankr.D.Conn.1999) (quoting *AT & T Universal Card Services Corp. v. Williams (In re Williams)*, 214 B.R. 433, 435 (Bankr. D.Conn.1997)).

The gist of the First Count is that the defendant, in order to induce the plaintiff to provide funds towards the down payment on the residence, "falsely promised to return such down payment to the plaintiff in the event that plaintiff and defendant Radcliffe ceased cohabitation." (Complaint at 3, ¶ 10(d).) The plaintiff further alleges that, at the time the Agreement was signed, the defendant intended not to repay it.

Intent to deceive is an issue of fact to be determined based on the totality of the circumstances. *In re Bonnanzio*, 91 F.3d at 301–302. Neither the circumstances surrounding the purchase of the residence nor those subsequent thereto indicate that the defendant executed the Agreement with any intent to deceive or defraud the plaintiff. Although the parties had originally intended to own the residence jointly and to apply together for the mortgage, the suggestion that the deed and mortgage be in the defendant's name came from the mortgage broker recommended by Mrs. McCarthy. The parties, who, at that time, had already been living together for three years, intended to marry eventually and continued cohabitating for two more years following the purchase. Furthermore, the incident that led to the parties' eventual separation was not precipitated by the defendant, but concerned the relationship between the plaintiff and Keith. The court concludes that the plaintiff has not met his burden of proof with regard to actual fraudulent intent of the defendant, and that his claim is not excepted from discharge pursuant to § 523(a)(2)(A).

## C. Second Count— § 523(a)(6)

In the Second Count, the plaintiff asserts that his claim should be excepted from discharge pursuant to Bankruptcy Code § 523(a)(2)(A) (debt "for willful and malicious injury by the debtor to another entity or to the property of another entity"). The plaintiff alleges that the defendant "willfully and maliciously converted [the funds he provided towards the down payment] to her own use" by breaching the repayment terms of the Agreement.

The Supreme Court, in *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), analogized the language of § 523(a)(6) to that of intentional torts

and held that nondischargeability in accordance therewith requires "a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury." The plaintiff has failed to provide evidence of any deliberate injury, conversion or other tortious conduct by the defendant. Both the allegations and the evidence presented support a claim for breach of contract, not conversion. The plaintiff asserts a claim for repayment, pursuant to the terms of the Agreement, of funds he advanced to the defendant towards the down payment on the residence. The Supreme Court held that exceptions to discharge under § 523(a)(6) should not be construed so broadly that even a "knowing breach of contract could ... qualify." *Id.* at 62, 118 S.Ct. 974. The court concludes that the plaintiff's claim is not excepted from discharge pursuant to § 523(a)(6).

## IV.

### *DISCUSSION RE: THIRD COUNT*

#### A. *Jurisdiction*

Paragraph 2 of the complaint alleges, and the defendant admits in her answer, that the court has jurisdiction over each of the counts of the complaint pursuant to 28 U.S.C. §§ 157, 1334 and 11 U.S.C. § 523. The jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute. Title 28 U.S.C. § 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to a case under title 11." The district courts may, in turn, refer "any or all proceedings arising under title 11 or arising in or related to a case under title 11 ... to the bankruptcy judges for the district." 28 U.S.C. § 157(a). Here, the Bankruptcy Court's jurisdiction ... must be based on the "arising under," "arising in," or "related to" language of §§ 1334(b) and 157(a). *Celotex Corp. v. Edwards,* 514 U.S. 300, 307, 115 S.Ct. 1493, 1498, 131 L.Ed.2d 403 (1995).

" 'Arising under' jurisdiction exists where one invokes a substantive right created by federal bankruptcy law." *Glinka v. Murad (In re Housecraft Indus. USA, Inc.),* 310 F.3d 64, 70 (2d Cir.2002) (citing *Browning v. Levy,* 283 F.3d 761, 772–73 (6th Cir.2002)). The First and Second Counts, which arise under Bankruptcy Code §§ 523(a)(2)(A) and 523(a)(6), respectively, fall within such jurisdiction. *See, e.g. Menck v. LaPaglia (In re Menck),* 241 B.R. 896, 904 (9th Cir. BAP 1999). "Arising in" proceedings are "those that are not based on any right expressly created by title 11, but, nevertheless, would have no existence outside of the bankruptcy." *Liberty Mutual Ins. Co. v. Lone Star Indus., Inc.,* 313 B.R. 9, 16 (D.Conn.2004) (quoting *Wood v. Wood (In re Wood),* 825 F.2d 90, 97 (5th Cir.1987)). The plaintiff's claim that the defendant holds title to the residence in trust for his benefit is clearly not within either the "arising under" or the "arising in" jurisdiction of the bankruptcy court, as it concerns only questions of state law.

With regard to the "related to" jurisdiction of the court, while "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate .... a bankruptcy court's 'related to' jurisdiction cannot be limitless." *Celotex,* 514 U.S. at 308, 115 S.Ct. 1493 (citing *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984)). "The test for determining whether litigation has a significant connection with a pending bankruptcy proceeding is whether its outcome might have any conceivable effect on the

bankrupt estate." *Publicker Indus., Inc. v. United States (In re Cuyahoga),* 980 F.2d 110, 114 (2d Cir.1992) (citations and internal quotation marks omitted).

■ The Third Count concerns ownership interests in the residence. Because the defendant claimed the residence as exempt and no party filed a timely objection thereto, the residence is not part of the defendant's bankruptcy estate. "Where a debtor has already reclaimed exempted property from the estate, a dispute over such property is not sufficiently 'related to' the bankruptcy case to sustain federal jurisdiction under ... 28 U.S.C. § 1334(B)." *Bell v. Bell,* 225 F.3d 203, 215 (2d Cir.2000) (citing *In re Turner,* 724 F.2d 338, 341 (2d Cir.1983)).

■ The court concludes that 28 U.S.C. 1334 does not provide the bankruptcy court with bankruptcy jurisdiction over the Third Count. However, the Second Circuit Court of Appeals has interpreted 28 U.S.C. § 1367(a) [2] to confer supplemental jurisdiction (sometimes referred to as pendent or ancillary jurisdiction) on the bankruptcy courts as well as the district courts. *Klein v. Civale & Trovato, Inc. (In re Lionel Corp.),* 29 F.3d 88, 92 (2d Cir.1994) ("The bankruptcy court had

jurisdiction ... under principles of supplemental jurisdiction.").[3] "[I]n order to exercise such jurisdiction the 'state and federal claims must derive from a common nucleus of operative fact' and be such that a court would 'ordinarily be expected to try them all in one judicial proceeding.'" *Liberty Mutual Insurance Co. v. Lone Star Industries, Inc.,* 313 B.R. 9, 21 (D.Conn.2004) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). The Third Count is based upon the same facts and circumstances as the First and Second Counts, viz. the purchase of the residence, and does not present any of the considerations that would permit the court to decline the exercise of supplemental jurisdiction. *See* 28 U.S.C. § 1367(c).[4]

The court concludes that it has supplemental jurisdiction over the Third Count.

### B. *Residence Held in Trust*

■ The Third Count alleges that "[t]he parties manifest an intention to create a trust, in which the debtor held legal title to the Premises in trust for the benefit of herself and the plaintiff." (Complaint at 4, ¶ 12.) The plaintiff seeks a

---

**2.** 28 U.S.C. § 1367(a), Supplemental Jurisdiction, provides:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

**3.** Other courts that have considered the question have disagreed with *Lionel* and held that bankruptcy courts do not have supplemental

jurisdiction. *See, e.g. Walker v. Cadle Co. (In re Walker),* 51 F.3d 562 (5th Cir.1995).

**4.** 28 U.S.C. § 1367(c) provides:

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

declaration that the defendant holds the residence in a constructive trust for the benefit of the plaintiff. (Complaint at 6, ¶ 1.)

Although the parties disagree now as to what their intent was when the residence was purchased (the plaintiff asserting an ownership interest in the property and the defendant alleging that the funds provided were a gift), the court, in light of the record made, concludes that the funds advanced to the defendant were in the nature of a loan to be repaid if the parties separated within ten years without having married, as explicitly stated in the Agreement the parties signed.

■■■ "Courts in this circuit have consistently held that contract-based claims arise under federal bankruptcy law when the contract is entered into." *In re Caldor, Inc.—NY,* 240 B.R. 180, 192 (Bankr. S.D.N.Y.1999) (citations omitted). Even a postpetition breach of a prepetition contract gives rise to a prepetition claim, albeit one that may be contingent and unmatured as of the petition date. *Id.* Here, the parties entered into the Agreement, specifying that, upon the separation of the parties, the defendant would repay the plaintiff the $15,000 he provided towards the down payment. That the defendant breached the Agreement postpetition by not repaying the $15,000 when the plaintiff vacated the premises does not transform the nature of the plaintiff's claim from a unsecured prepetition claim for money damages to a property interest in the residence.

Bearing in mind the court's conclusion that the Agreement, specifying the obligations assumed by the defendant in return for the $15,000 provided by the plaintiff, establishes the plaintiff's claim arising from that transaction as an unsecured prepetition breach of contract claim, the court will consider whether Connecticut state law provides some other grounds for imposition of a trust on the residence in favor of the plaintiff.

■■■ The only evidence presented of any intent to impose a trust was the testimony of the plaintiff and Mrs. McCarthy that they thought the plaintiff was to be an "equal partner" in the residence. The defendant denies any such agreement. (Ans. at ¶ 6(b), (d).) "[I]t is well settled that, in general, real property absolutely conveyed cannot be shown to be subject to an express trust created by parol agreement." *Cohen v. Cohen,* 182 Conn. 193, 202, 438 A.2d 55 (1980) (citations omitted). The Statute of Frauds, Conn. Gen.Stat. § 52–550, provides, in relevant part:

> (a) No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged: ... (3) upon any agreement made upon consideration of marriage; (4) upon any agreement for the sale of real property or any interest in or concerning real property....

Absent any writing evidencing an agreement by the parties to hold the residence in an express trust, any trust imposed upon the residence could not be an express trust, but would have to be an equitable trust—either a constructive trust or a resulting trust—created by operation of law. "In such cases, a trust does not arise so much by reason of the parol agreement of the parties but by operation of law." *Id.*

■■■ The defendant argues that the plaintiff is barred from seeking equitable relief by the doctrine of unclean hands primarily because he "intentionally misrepresented to a bank that the money was a gift and not a loan." (Def. Brief at 13.) This argument misapplies the doctrine. "[I]t is a well-established rule of equity

jurisprudence that the party to a suit, complaining that his opponent is in court with unclean hands because of the latter's conduct ...must show that [s]he [her]self has been injured by such conduct, to justify the application of the principle to the case. The wrong must have been done to the defendant [her]self and not to some third party." *Id.* at 206, 438 A.2d 55 (citations and quotation marks omitted). The defendant, at whose request the plaintiff signed the gift statement, cannot now interpose that statement as a bar to any remedy to which the plaintiff might otherwise be entitled.

 "When the purchase money for property is paid by one and the legal title is taken in the name of another, a resulting trust ordinarily arises at once, by operation of law, in favor of the one paying the money—If it can be proved that the intention of the parties was otherwise, there is no resulting trust." *Id.* at 201, 438 A.2d 55(citations and quotation marks omitted). The presumed intent from which the law infers a resulting trust is a question of fact which may be rebutted by evidence that the parties intended the transaction to be a gift or a loan. *See Farrah v. Farrah,* 187 Conn. 495, 500, 446 A.2d 1075 (1982). It is the intention of the parties at the time of the transfer, not at some subsequent time, that determines whether a resulting trust arises. *See, e.g. Restatement (Second) of Trusts* § 443 (1959). "Evidence of acts subsequent to the conveyance are relevant only to intent at the time title passed." *Farrah,* 187 Conn. at 502, 446 A.2d 1075. Having determined that the intent of the parties at the time of the purchase was in the nature of a loan, as evidenced by the terms of the Agreement, the court concludes that the presumption of a resulting trust has been rebutted. Furthermore, this conclusion is unaffected by whether the defendant later defaulted on her repayment obligation under the Agreement.

 "[A] constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that [s]he would be unjustly enriched if [s]he were permitted to retain it." *Cohen,* 182 Conn. at 203, 438 A.2d 55. "A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of legal title may not in good conscience retain the beneficial interest, equity converts him to a trustee." *Id.* (quoting Judge Cardozo). The court finds nothing unconscionable in the terms of the Agreement, nor does it find that the defendant, who paid the lion's share of the household expenses over the years the parties lived together, was unjustly enriched by the plaintiff's irregular monetary contributions or home maintenance services. Accordingly, the court concludes that no constructive trust arose.

## V.

### DISCUSSION RE: COUNTERCLAIM FOR ATTORNEY'S FEES

 The defendant counterclaims for her attorney's fees, citing Bankruptcy Code § 523(d), which provides:

(d) If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

The court has held that the plaintiff's claim is not excepted from discharge under § 523(a)(2). In connection with her claim, the defendant has put into evidence an undated copy of a statement from her attorney showing dates, hours and fees for professional services performed in connection with this proceeding without any indication as to which count of the complaint each item referred. In light of the defendant's failure to substantiate the portion of such services attributable solely to the First Count, pursuant to § 523(a)(2), the court finds, assuming but not deciding that the debt be treated as a "consumer debt," the defendant's request unsubstantiated. In addition, the court finds that the plaintiff's position is not one that is "not substantially justified" and concludes that an award of attorney's fees would be unjust under the present circumstances.[5]

## VI.

### CONCLUSION

In accordance with the foregoing discussion, the court concludes that the plaintiff's claim is discharged, that the defendant is not entitled to an award of attorney's fees, and that no resulting or constructive trust on the property arose. Judgment shall enter for the defendant on the First, Second and Third Counts of the complaint, and for the plaintiff on the defendant's counterclaim for attorney's fees.

### JUDGMENT

This action came on for trial before the Court, Honorable Robert L. Krechevsky, U.S. Bankruptcy Judge, presiding, and the issues having been duly tried, and the Court having issued a memorandum of even date, it is

ORDERED, ADJUDGED AND DECREED that the debt of the defendant to the plaintiff is discharged, that the defendant's title to the property located at 4 Harlan Road, Farmington, Connecticut is not subject to any equitable trust in favor of the plaintiff, and that the defendant is not entitled to an award of attorney's fees.

---

**5.** The purpose of § 523(d), as indicated in its legislative history, further supports the court's conclusion that attorney's fees are inappropriate under the circumstances here presented:

> The purpose of the provision is to discourage creditors from initiating proceedings to obtaining a false financial statement exception to discharge in the hope of obtaining a settlement from an honest debtor anxious to save attorney's fees, Such practices impair the debtor's fresh start and are contrary to the spirit of the bankruptcy laws. S.Rep. No. 95–989, 2d Sess. 80 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5866.